IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02007-LTB

**DAVID LEE BURKHART**,

　　　　　Applicant,

v.

**LOU ARCHEULETA**, Warden; and
**THE ATTORNEY GENERAL OF THE STATE OF COLORADO**,

　　　　　Respondents.

---

## ORDER OF DISMISSAL

---

Applicant David Lee Burkhart is in the custody of the Colorado Department of Corrections (DOC) and currently is incarcerated at the Freemont Correctional Facility in Canon City, Colorado.  Applicant, acting *pro se*, initiated this action by filing an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  Applicant was granted leave to proceed pursuant to 28 U.S.C. § 1915.

On October 26, 2015, Magistrate Judge Gordon P. Gallagher directed Respondent to file a Response to the Application.  On October 30, 2015, Respondent filed a Response, ECF No. 8.  Applicant filed a Reply on December 1, 2015 (ECF No. 13).  The Court, therefore, will proceed to address this action.

The Court must construe the Application liberally because Applicant is a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not act as a *pro se* litigant's advocate.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the action will be

dismissed.

## A. Relevant Procedural History

The Court of Appeals for Colorado set forth the following relevant background for

this action.

> The prosecution brought multiple charges against defendant stemming
> from the sexual assault of his stepson.  As part of a plea agreement,
> defendant entered a guilty plea for two counts of sexual exploitation of a
> child.  The district court sentenced defendant to eight years of probation for
> each count to run concurrently.  A condition of defendant's probation was that
> he would be supervised on sex offender intensive supervision probation,
> which required him to "attend and actively participate in a sex offender
> evaluation and treatment·program" and "successfully complete the program
> to the satisfaction of the probation officer and the treatment provider."
>
> About a month after his sentencing, defendant's probation officer filed
> a complaint seeking to revoke defendant's probation.  The probation officer
> alleged that defendant violated three conditions of his probation:  he (1) lived
> in a residence with a minor, (2) changed his residence without prior approval,
> and (3) was terminated from his mandated treatment program.  The district
> court found that defendant violated the requirement that he not share a
> residence with a minor and, as a result, was terminated from his treatment
> program.  The court therefore revoked his probation.  The Probation
> Department and prosecution recommended that defendant be sentenced to
> the Department of Corrections.  The district court, however, concluded the
> recommended punishment was too "harsh" and instead sentenced defendant
> to ninety days in the county jail and reinstated defendant's probation.
>
> Not long thereafter, defendant's probation officer filed another
> complaint to revoke defendant's probation.  The officer based her complaint
> on defendant's termination from his mandated treatment program.  According
> to the director of the treatment program, the program was "unable to
> realistically treat, manage, and/ or contain [defendant], as he refuse[d] to be
> accountable in the community."  The director concluded that defendant's "risk
> and lack of accountability necessitate[d] a higher level of treatment,"
> specifically in the Department of Corrections, because defendant violated
> several treatment rules by
>
> > • Failing to abide by the program's two-man accountability rule
> > while in the community.
> >
> > • Using computer and video games without permission.

2

• Having a conversation with a female neighbor without prior approval.

• Failing to complete his assignments.

• "[D]emonstrat[ing] an aggressive demeanor."

• Continuing to deny forcing anal sex on the victim, as alleged in the underlying conviction.

The district court found that defendant violated the condition of his probation requiring him to attend and actively participate in a sex offender treatment program.   The court specifically stated that it considered defendant's "overall response" to treatment, rather than any one factor in isolation.   It also recognized the "extraordinary step" of the treatment program to readmit defendant after his initial termination.   The district court then found defendant "inappropriate for probation" and imposed a sentence to the Department of Corrections for six years.

*People v. Burkhart* (Colo. App. No. 09CA1846, April 11, 2013) (ECF No. 8-4, pp. 3-5).

The CCA affirmed the district court's order revoking his probation on April 11, 2013 (ECF No. 8-4).  On May 19, 2014, the Colorado Supreme Court denied Applicant's petition for certiorari.

On September 25, 2014, Applicant filed a motion for sentence reconsideration pursuant to Colo. Crim. P. 35(b).   The post-conviction court denied the motion on November 12, 2014.  Applicant did not appeal that determination.

On September 14, 2015, Applicant filed the instant action wherein he asserts that his Due Process rights were violated when his probation was revoked based on "hyper-technical" violations.  However, his assertions, taken as true, do not state a violation of his due process rights, either procedurally or substantively.

**B. Procedural Requirements for Federal Habeas Corpus Review**

Before this Court can address the merits of Applicant's claim, it is necessary to

examine whether this Application fulfills the applicable procedural requirements under the federal habeas corpus statute.

1.   Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review in accordance with the state's procedural requirements. *See, e.g., Castille v. Peoples*, 489 U.S. 346, 351 (1989).  To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).  Even if a state court fails to consider the constitutional claim, it is still exhausted as long as the state court had the opportunity to address it.

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts.  In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845(1999).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

2.   Procedural Default

4

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine.

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotations and citations omitted).

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision . . . . For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (internal quotations and citations omitted). *See also Dugger v. Adams*, 489 U.S. 401, 410, n. 6 (1989) (holding that a state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases.").

Moreover, if a habeas applicant "failed to exhaust state remedies and the court to

which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred ... there is a procedural default." *Coleman*, 501 U.S. 722 at 735 n.1; *see also Harris v. Reed*, 489 U.S. 255, 269–70 (1989); *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (" 'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation omitted).  Thus, if it is obvious that an unexhausted claim would be procedurally barred in state court, the claim is subject to an anticipatory procedural bar and is procedurally barred from federal habeas review.

An applicant whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either:  1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent argues that Applicant has not exhausted his claim because he failed to raise a constitutional claim in the state courts.   However, his Brief does cite Constitutional law.  Thus, because it is clear that Petitioner has not demonstrated that he is entitled to federal habeas corpus relief with respect to his claim, this Court need not undertake the lengthy analysis of state law that would be required to determine the applicability of the procedural default doctrine.  *See Lines v. Larkins*, 208 F.3d 153, 165 (3d Cir. 2000) (noting that "federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred"), *cert. denied*, 531 U.S. 1082 (2001).  Accordingly, this Court will review Applicant's claim under

6

the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement.   *See* 28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).

### C. Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a superstate appellate court.  *See Estelle v. McGuire*, 502 U.S. 62, 6768 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the [applicant's] custody simpliciter."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Thus, pursuant to the federal habeas corpus statute, a federal court may consider a habeas corpus petition filed by a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  Claims based on errors of state law or challenging a state court's interpretation of state law are not cognizable on federal habeas review.  *McGuire*, 502 U.S. at  (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Moreover, a federal court must accord a presumption of correctness to a state

court's factual findings, which an applicant can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e).  Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact.  *See Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002).

### D. Applicant's Claim

In the instant action Applicant claims that his due process rights were violated when his probation was revoked and he was sentenced to two concurrent terms of seven years of imprisonment.  "Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution.  The pertinent language of the Amendment provides as follows.

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1 (emphasis added).

The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government.  The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. *Daniels v. Williams*, 474 U.S. 327, 329–33 (1986). (citations omitted.)

The procedural aspect of the Due Process Clause guarantees the availability of

certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest.  To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest.  *Daniels*, 474 U.S. at 339.  If a person does not have a constitutionally-protected interest, he or she is not entitled to the procedural protections afforded by the Due Process Clause.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).  A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973).  Liberty interests that fall within this category include the revocation of parole, *Morrissey v. Brewer*, 408 U.S. 471 (1972), and the revocation of probation, *Gagnon*, 411 U.S. at 778.

The Supreme Court has determined that Due Process requires that a probationer is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision.  *Gagnon*, 411 U.S. at 781-82.  At the preliminary hearing, a probationer is entitled to notice of the alleged violations of probation, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing.  *Id.* at 786. (citations omitted).  The final hearing is a less summary one because the decision under

consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the 'minimum requirements of due process' include very similar elements:  (a) written notice of the claimed violations of probation; (b)  disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking probation.  *Id.*

Here, Applicant does not challenge the procedures used in the revocation of his probation.  Instead, he claims that the trial court abused its discretion by revoking his probation for minor technical violations.  Construing his Application, liberally, this Court assumes he is raising a substantive due process claim.  In contrast to procedural due process' focus on procedures, substantive due process prohibits certain government actions irrespective of the procedures which attend those actions.  The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities.  Whereas procedural due process concerns deprivations of liberty interests and assures that such deprivations are not accomplished unless attended by certain procedures, substantive due process does not require a liberty interest in order to be violated.  *See, e.g., Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) (holding that denial of parole based on considerations of race may state a claim for violation of substantive due process even though there is no liberty interest in parole); *Pittsley v. Warish*, 927 F.2d 3,

6 (1ˢᵗ Cir. 1991) (under one theory of substantive due process "it is not required that the plaintiffs prove a violation of a specific liberty or property interest") (citing *Rochin v. California*, 342 U.S. 165,172 (1952)).

The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause.   Nonetheless, the Court has clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Liberally construed and taken as true, Applicant's allegations do not state a violation of his substantive due process rights with respect to the court's action in revoking his probation.   In this regard, in upholding the trial court's determination, the CCA held as follows.

## II. Revocation of Defendant's Probation

Defendant argues that the district court erred when it found defendant violated a condition of his probation and then abused its discretion by revoking his probation.  We disagree.

## A. Standard of Review

A determination that a defendant has violated his probation is a question of fact for the trial court.  *People v. Elder*, 36 P.3d 172, 173 (Colo. App. 2001). We will reverse a trial court's finding only if its judgment contradicts "the manifest weight of the evidence."  *People v. Trujillo*, 189 Colo. 206, 209, 539 P.2d 1234, 1236 (1975) (in department).  "Once a violation is found, the decision whether to revoke a defendant's probation is within the trial court's discretion."  *Elder*, 36 P.3d at 173.

## B. Analysis

Defendant contends that the trial court erred in finding that he violated

the terms and conditions of his probation because he was largely in compliance with both the conditions of his probation and the requirements of his treatment program.   However, "if a probationer violates *any* condition of an order of probation, the probation may be revoked."   *Id.* (emphasis added); *accord People v. Ickler*, 877 P.2d 863, 866 (Colo. 1994).

Here, a condition of defendant's probation was that he "attend and actively participate in a sex offender evaluation and treatment program" and "successfully complete the program to the satisfaction of the probation officer and the treatment provider."   The treatment program provided evidence that defendant had been terminated for violating several of its rules.   Thus, the trial court's factual finding that defendant violated the condition was not "contrary to the manifest weight of the evidence."   *Trujillo*, 189 Colo. at 209, 539 P.2d at 1236.

Defendant next argues that, even if he violated a condition of his probation, the trial court abused its discretion by revoking his probation "for [a] minor technical violation[]."   In *Ickler*, however, the supreme court held that it is not an abuse of discretion to revoke a defendant's probation for failing to fully cooperate with a sex offender treatment program.   877 P.2d at 867; *see also People v. Colabella*, 948 P.2d 77, 79-80 (Colo. App. 1997) (holding that the trial court did not abuse its discretion in revoking probation where the "defendant had a 'very high risk for recidivism' and ... successful completion of appropriate treatment was a critical prerequisite to allowing him back into the community").

Here, the director of defendant's treatment program terminated defendant's treatment twice for violations of the program's rules.   After the first termination, the district court reinstated defendant's probation.   After the program terminated defendant's treatment a second time, the court decided to revoke his probation because of the "safety of the community, amenability of the defendant at rehabilitation, [and] the nature of the offense."   Given defendant's history and the consideration of the trial court, we cannot conclude that the court abused its discretion when it revoked defendant's probation.

The order is affirmed.

Liberally construed and taken as true, Plaintiff's allegations do not state a violation of his substantive due process rights with respect to the Court's action in revoking his probation for failing to successfully complete a sex offender treatment program.   Under Colorado law, probation is a privilege, not a right.   *Holdren v. People*, 168 Colo. 474, 478,

12

452 P.2d 28, 30 (1969).  If a probationer violates any condition of an order of probation, the order may be revoked.  *Id.*  *See also* Colo. Rev. Stat. §§ 16-11-205 and 206.   At the hearing, the prosecution has the burden of establishing by a preponderance of the evidence the violation of a condition of probation.  Colo. Rev. Stat. § 16-11-206 (3).  If the court determines that a violation of a condition of probation has been committed, it shall either revoke or continue the probation.  Colo. Rev. Stat. § 16-11-206 (5).   If probation is revoked, the court may then impose any sentence which might originally have been imposed or granted.  *Id.*

In Applicant's case, the Court found, and Applicant admitted, that he did indeed violate the conditions of his probation by failing to complete the required sex offender treatment.  In reviewing the Court's exercise of discretion in revoking probation, this Court's only role is to insure that the Court followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious nor based on impermissible considerations.  *See, e.g., Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) (finding racial factors used to decide parole violated applicant's substantive due process rights); *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) (holding that the defendants' admitted reliance on false information constituted arbitrary and capricious treatment in violation of substantive due process).

The Court identified legitimate reasons for exercising its discretion in revoking Applicant's probation.  Applicant does not allege that his probation was revoked based on unconstitutional criteria such as race or religion.  Nothing in the record before this court suggests that the Court exercised its discretion in either an arbitrary or capricious manner.  Although Applicant alleges that he substantially completed all of his probation conditions,

the Court clearly indicated that he failed to complete his required sex offender treatment. *Cf. Banks v. Pennsylvania Bd. of Probation and Parole*, Civil No. 03–6676, 2004 WL 906296, at *4 (E.D. Pa. April 28, 2004) ("[T]he Board's decision that Plaintiff may require continued participation in a prescriptive program does not constitute an arbitrary or capricious decision.").

In sum, Applicant fails to show that requiring him to successfully complete a sex offenders treatment program or other rehabilitation programs that require him to admit guilt is conscience shocking or that such a requirement constitutes behavior that is intended to injure him in a way that is unjustifiable by any government interest.

Here, Applicant has failed to demonstrate any violation of the Constitution, laws, or treaties of the United States with respect to the Court's decision in revoking his probation. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief.

Section 2253 of the Habeas Corpus Statute provides the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Applicant has not made any showing that he was denied any of his constitutional rights. Accordingly, a certificate of appealability will be denied.

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status will be denied for the purpose of appeal.   *See Coppedge v. United States*, 369 U.S. 438 (1962).   If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth

Circuit within thirty days in accordance with Fed. R. App. P. 24.     Accordingly, it is

**ORDERED** that the Application for Writ of Habeas Corpus Pursuant to 28 USC 2254

(ECF No. 1) is **DENIED** and this action is **DISMISSED**.  It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied.

It is

**FURTHER ORDERED** that a certificate of appealability is **DENIED**.


DATED January 4, 2016, at Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court

15